T.C. Memo. 2004-22


UNITED STATES TAX COURT


LOUISE DEMIRJIAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8836-02.                    Filed January 30, 2004.


<u>Chris Pappas</u>, for petitioner.

<u>Gerard Mackey</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  This proceeding was commenced under section 6015 for review of respondent's determination that petitioner is not entitled to relief from joint and several liability for any portion of the unpaid interest resulting from an understatement of tax on a joint return filed with her former husband for 1989. The issues for decision are:  (1) Whether petitioner is eligible

for relief from joint and several liability under either section 6015(b) or section 6015(c) and (2) whether respondent abused his discretion in denying petitioner's request for relief from joint and several liability under section 6015(f).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. All amounts have been rounded to the nearest dollar.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time that the petition in this case was filed, petitioner resided in New York, New York.

## Background

Petitioner married George Apostle (Apostle) on May 14, 1989. On or about June 29, 1989, petitioner sold an apartment in New York City (New York apartment) that she owned jointly as tenants in common with John Demirjian, petitioner's first husband. Petitioner realized a $564,000 gain on this sale. Both petitioner and Apostle were under the age of 55 when the New York apartment was sold. Petitioner and Apostle were divorced on September 22, 1994. Apostle died in 2002.

## The Original Joint Return

On or about September 24, 1990, petitioner and Apostle filed a joint Form 1040, U.S. Individual Income Tax Return, and

attachments for 1989 (original joint return).  The original joint return was timely filed pursuant to an extension.  Katz & Katz, Certified Public Accountants, of Brooklyn, New York (Katz & Katz), prepared the original joint return.  Petitioner and Apostle signed the original joint return.

The original joint return included Form 2119, Sale of Your Home.  Although neither petitioner nor Apostle was eligible to claim the one-time exclusion of $125,000 from the gain on the sale of the New York apartment under section 121, this exclusion was claimed on Form 2119.  Petitioner knew that she was not eligible to claim the section 121 exclusion at the time that the original joint return was filed.

In addition to claiming the section 121 exclusion on Form 2119, petitioner and Apostle elected to defer recognition of a portion of the gain realized on the sale of the New York apartment under section 1034.  The return reported that they bought a new principal residence for $245,000 during the replacement period provided under section 1034.  Petitioner and Apostle did not purchase any property that would have qualified as replacement property under section 1034 during the replacement period.

By claiming the section 121 exclusion and making the section 1034 election on Form 2119, petitioner and Apostle recognized only $288,000 of the $564,000 gain realized on the sale of the

New York apartment.  Petitioner and Apostle did not report this $288,000 gain, however, on Schedule D, Capital Gains and Losses, of their original joint return.  As a result of this omission, petitioner and Apostle reported total income of only $43,210 on their original joint return and requested a tax refund in the amount of $4,774.  Had the original joint return properly treated the gain realized on the sale of the New York apartment, petitioner and Apostle would have reported an income tax liability of $110,470 for 1989 (1989 income tax liability).

The First Amended Joint Return

On or about June 12, 1992, petitioner and Apostle filed an amended joint Form 1040X, Amended U.S. Individual Income Tax Return, and attachments for 1989 (first amended joint return).  Katz & Katz prepared the first amended joint return.

The first amended joint return also included a Form 2119.  As on the Form 2119 that was attached to their original joint return, petitioner and Apostle claimed the one-time exclusion from the gain realized on the sale of the New York apartment under section 121 and elected to defer recognition of a portion of that gain under section 1034.  Accordingly, they recognized only $288,000 of the $564,000 gain realized on the sale of the New York apartment.

In contrast to their original joint return, petitioner and Apostle reported the $288,000 gain on Schedule D of their first

amended joint return. A portion of the $288,000 gain that was reported on Schedule D was offset by a long-term capital loss carryover of $166,865 and a short-term capital loss carryover of $6,870. Petitioner and Apostle had reported a long-term capital loss carryover of only $51,865 on Schedule D of their original joint return. As a result of including the $288,000 gain on Schedule D, petitioner and Apostle reported total income of $165,894. Based upon this amount of total income, the total tax shown on the first amended joint return was $39,047. After subtracting the amount of Federal income tax withheld during 1989 and adding back the refund requested on the original joint return, petitioner and Apostle owed income tax on the first amended joint return in the amount of $36,171.

Apostle signed and filed the first amended joint return while petitioner was in California. Before leaving for California, however, petitioner signed a blank check for Apostle to use to pay the income tax liability reported on the first amended joint return. This check was made payable to the Internal Revenue Service (IRS) in the amount of $36,171 on June 12, 1992. Petitioner also paid $8,690 of interest on the past due taxes shown on the first amended joint return on August 21, 1992. Even though petitioner made these payments, she did not request that Apostle show her the first amended joint return until May 1994.

The Second Amended Joint Return

After petitioner and Apostle were divorced, petitioner filed a second amended joint Form 1040X and attachments for 1989 (second amended joint return) on November 17, 1994. Apostle neither signed nor consented to the filing of the second amended joint return.

The second amended joint return also included a Form 2119. Petitioner neither claimed the one-time exclusion from the gain realized on the sale of the New York apartment under section 121 nor elected to defer recognition of any portion of the gain realized on that sale under section 1034. By not claiming the section 121 exclusion or making the section 1034 election on Form 2119, petitioner recognized the entire $564,000 gain realized on the sale of the New York apartment.

Petitioner reported the $564,000 gain on Schedule D of the second amended joint return. Like the first amended joint return, a portion of the $564,000 gain reported on Schedule D was offset by a long-term capital loss carryover of $166,865 and a short-term capital loss carryover of $6,870. As a result of including this $564,000 gain on Schedule D, petitioner reported total income of $441,894. Based upon this amount of total income, the total tax shown on the second amended joint return was $118,120. After subtracting the total tax shown on the first amended joint return (i.e., $39,047), petitioner owed income tax

on the second amended joint return of $79,073.  Petitioner paid the income tax liability reported on the second amended joint return on or about November 17, 1994.  With this payment, petitioner paid the 1989 income tax in full.

Accrual of Interest on the 1989 Income Tax Liability

Because petitioner and Apostle did not report the correct income tax liability on the original joint return, interest accrued under section 6601 on the full amount of the 1989 income tax liability from April 15, 1990, the due date of the original joint return, until June 12, 1992, the date on which petitioner paid $36,171 of the 1989 income tax liability (1990-1992 interest liability).  Thereafter, interest continued to accrue on the remaining amount of the 1989 income tax liability until November 17, 1994, the date on which the 1989 income tax liability was paid in full (1992-1994 interest liability).  Petitioner paid $8,690 of the 1990-1992 interest liability on August 21, 1992.  Neither petitioner nor Apostle has paid any of the 1992-1994 interest liability.  Consequently, under section 6601, interest continues to accrue on the remaining amount of the 1990-1992 interest liability and the entire 1992-1994 interest liability (collectively, these amounts of accrued interest are referred to as the "unpaid interest").  Neither petitioner nor Apostle was required by their divorce decree to pay any of the unpaid interest.

Petitioner's Request For Relief

On October 19, 1998, petitioner filed Form 8857, Request for Innocent Spouse Relief, and requested relief from joint and several liability for the interest resulting from a "1989 Amended Tax Return".  Petitioner asserted on Form 8857 that the erroneous item on that return was a "One Time Tax Exclusion on the Gain of a Home Sale" in the amount of $125,000.

On February 7, 2002, respondent sent a Notice of Determination Concerning Your Request for Relief from Joint and Several Liability under Section 6015 (notice of determination) to petitioner denying her request for relief from joint and several liability.  Respondent determined that petitioner was not eligible for relief from joint and several liability for the unpaid interest because there was no joint liability as a result of Apostle's not signing the second amended joint return. Alternatively, respondent determined that, even if Apostle were found to be jointly and severally liable, petitioner did not qualify for relief from joint and several liability under section 6015(b), (c), or (f) for the unpaid interest because (1) the gain realized on the sale of the New York apartment and the unpaid interest resulting from that gain's treatment on the original joint return were entirely attributable to her; (2) she had knowledge or reason to know of the underpayment; (3) she would not suffer economic hardship after paying the unpaid interest, as

she would be able to pay for reasonable basic living expenses; and (4) it was not inequitable to hold her liable for the unpaid interest under all of the facts and circumstances of her case and under the guidelines of Rev. Proc. 2000-15, 2000-1 C.B. 447.

OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is fully responsible for the accuracy of the return and jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). A spouse (requesting spouse) may, however, seek relief from joint and several liability by following procedures established in section 6015. Sec. 6015(a).

Under section 6015(a), a requesting spouse may seek relief from liability under section 6015(b) or, if eligible, may allocate liability according to the provisions under section 6015(c). If relief is not available under either section 6015(b) or (c), an individual may seek equitable relief under section 6015(f). Section 6015(f) permits relief from joint and several liability where "it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)".

Petitioner contends that she is eligible for relief from joint and several liability under either section 6015(b) or (c) for the 1992-1994 interest liability. In essence, petitioner

argues that she was unaware that there was an understatement of tax on the first amended joint return that resulted in that return's only partially correcting the understatement on the original joint return. Accordingly, petitioner contends that she should be granted relief from joint and several liability for the interest that accrued as a result of that understatement on the first amended joint return. In addition to her argument that she is eligible for relief under either section 6015(b) or (c), petitioner argues that respondent abused his discretion by denying her equitable relief from joint and several liability for the 1992-1994 interest liability under section 6015(f). Petitioner does not contend that she should be granted relief from joint and several liability for the remaining amount of the 1990-1992 interest liability under the provisions of section 6015.

Respondent argues that petitioner is not eligible for relief under either section 6015(b) or (c). Moreover, respondent contends that there was no abuse of discretion in denying petitioner's request for equitable relief from joint and several liability for any portion of the unpaid interest under section 6015(f). Respondent has not pursued the argument that petitioner was ineligible for relief under section 6015 because Apostle did not sign the second amended joint return.

Relief Under Section 6015(b) and (c)

Section 6015(b) provides relief from joint and several liability for tax (including interest, penalties, and other amounts) where: (1) A joint return has been made for a taxable year; (2) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return; (3) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such an understatement; (4) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for the taxable year attributable to the understatement; and (5) the other individual makes a valid election. Sec. 6015(b)(1). Section 6015(c) allows a taxpayer, who is eligible and so elects, to limit his or her liability to the portion of a deficiency that is properly allocable to the taxpayer as provided in section 6015(d). Sec. 6015(c)(1).

Relief from joint and several liability under subsection (b) or (c) of section 6015 is premised on the existence of a deficiency for the year for which relief is sought. Sec. 6015(b)(1)(D), (c)(1); see H. Conf. Rept. 105-599, at 252-254 (1998), 1998-3 C.B. 747, 1006-1008. Consequently, if there is no deficiency for the year for which relief is sought, relief from joint and several liability is not available under either subsection. See Washington v. Commissioner, 120 T.C. 137, 146-147 (2003); see also Hopkins v. Commissioner, 121 T.C. 73, 88

(2003) (holding that neither section 6015(b) nor (c) provides relief from joint and several liability for the underpayment of a tax liability that was properly reported on a joint return); Block v. Commissioner, 120 T.C. 62, 65-66 (2003) (explaining that a prerequisite for relief under both section 6015(b) and (c) is the existence of a deficiency for which relief from joint and several liability is sought); Ewing v. Commissioner, 118 T.C. 494, 497, 498 n.4 (2002); cf. sec. 6015(e)(1).

In the instant case, there was an understatement of tax on the original joint return that resulted from the improper treatment of the gain that petitioner realized on the sale of the New York apartment. This understatement was partially corrected by the first amended joint return, and it was completely corrected when petitioner filed the second amended joint return in November 1994. For purposes of computing the amount of a deficiency for 1989, the total tax reported on the second amended joint return is treated as the amount of tax shown by petitioner on the original joint return. Sec. 6211(a); sec. 301.6211-1(a), Proced. & Admin. Regs.; e.g., Pesch v. Commissioner, 78 T.C. 100, 111 (1982); cf. Laing v. United States, 423 U.S. 161, 173 (1976) (a deficiency for a given year, reduced to its simplest terms, is the correct amount of tax less the amount shown as tax on the tax return). Consequently, there is no deficiency for 1989 for which petitioner can seek relief. Accordingly, petitioner is not

eligible for relief from joint and several liability under either section 6015(b) or (c).  In any event, she would not satisfy the requirements for such relief, as shown by our discussion, <u>infra</u>, of the knowledge and attribution factors.

Equitable Relief Under Section 6015(f)

Because petitioner is not eligible for relief from joint and several liability under either section 6015(b) or (c), we review the determination to deny equitable relief under section 6015(f) using an abuse of discretion standard.  <u>Butler v. Commissioner</u>, 114 T.C. at 287-292.  Under this standard of review, we defer to respondent's determination unless it is arbitrary, capricious, or without sound basis in fact.  <u>Jonson v. Commissioner</u>, 118 T.C. 106, 125 (2002) (citing <u>Butler v. Commissioner</u>, <u>supra</u> at 292; <u>Pac. First Fed. Sav. Bank v. Commissioner</u>, 101 T.C. 117, 121 (1993)), affd. __ F.3d __ (10th Cir., Dec. 30, 2003).  The question of whether respondent's determination was arbitrary, capricious, or without sound basis in fact is a question of fact.  <u>Cheshire v. Commissioner</u>, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002).  We are not limited to the matters contained in respondent's administrative record when deciding this question.  <u>Ewing v. Commissioner</u>, 122 T.C. __, __ (2004) (slip op. at 6-21).  Petitioner bears the burden of proving that respondent abused his discretion in denying relief under section

6015(f).  Washington v. Commissioner, supra at 146; Jonson v. Commissioner, supra at 125.

As directed by section 6015(f), respondent has prescribed procedures to use in determining whether a relief-seeking spouse qualifies for relief under that subsection.  At the time that respondent issued his notice of determination to petitioner, those procedures were found in Rev. Proc. 2000-15, 2000-1 C.B. 447.  This Court has upheld the use of these procedures in reviewing a negative determination.  See, e.g., Washington v. Commissioner, supra at 147-152; Jonson v. Commissioner, supra at 125-126.

Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448, lists seven threshold conditions that must be satisfied before respondent will consider a request for relief under section 6015(f).  Respondent conceded that petitioner has met those seven threshold conditions.  If the threshold conditions are satisfied, Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, lists circumstances where relief will generally be granted in cases where a liability reported on a joint return is unpaid.  We have considered the circumstances listed in Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, in cases where the liability reported on a joint return was unpaid.  See, e.g., August v. Commissioner, T.C. Memo. 2002-201; Collier v. Commissioner, T.C. Memo. 2002-144; Castle v. Commissioner, T.C. Memo. 2002-142.  We have

declined to consider them where the liability for which equitable relief was sought was not such a reported but unpaid liability. See, e.g., Mellen v. Commissioner, T.C. Memo. 2002-280. In the instant case, the 1992-1994 interest liability is not a liability that was reported on a joint return that remains unpaid. Rather, the 1992-1994 interest liability resulted from an understatement of tax on a joint return. Consequently, Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, is not applicable here.

If the requesting spouse satisfies the threshold conditions of Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448, but does not qualify for relief under Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, respondent looks to Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, to determine whether the taxpayer should be granted equitable relief. Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, provides a partial list of positive and negative factors that respondent is to take into account when considering whether to grant an individual full or partial equitable relief under section 6015(f). As Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, makes clear, no single factor is to be determinative in any particular case, all factors are to be considered and weighed appropriately, and the list of factors is not intended to be exhaustive.

Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, lists the following two factors that, if true, respondent weighs in favor

of granting relief and that, if not true, are neutral: (1) The taxpayer is separated or divorced from the nonrequesting spouse and (2) the taxpayer was abused by his or her spouse. Respondent concedes that the marital status factor weighs in favor of petitioner. The abuse factor is neutral in this case because petitioner failed to provide any evidence establishing abuse.

In addition, Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, lists the following two factors that, if true, respondent weighs against granting relief and that, if not true, are neutral: (1) The taxpayer received a significant benefit from the unpaid liability or the item giving rise to the deficiency and (2) the taxpayer has not made a good faith effort to comply with the Federal income tax laws in the tax years following the tax year to which the request for relief relates. The significant benefit factor is neutral in this case because petitioner ultimately paid the 1989 income tax liability. The noncompliance factor is also neutral in this case because both parties failed to argue or present evidence as to whether petitioner has made a good faith effort to comply with the Federal income tax laws since 1989.

Finally, Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, lists the following four factors that, if true, respondent weighs in favor of granting relief and that, if not true, respondent weighs against granting relief: (1) The taxpayer would suffer

economic hardship if relief is denied; (2) in the case of a liability that arose from a deficiency, the requesting spouse did not know and had no reason to know of the items giving rise to the deficiency; (3) the liability for which relief is sought is attributable to the nonrequesting spouse; and (4) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability (this factor weighs against relief only if the requesting spouse has the obligation).  The economic hardship factor weighs against petitioner because she failed to provide any evidence establishing economic hardship in this case (and argues, unpersuasively, that the economic hardship requirement is "discriminatory and unconstitutional").  Petitioner argues that the knowledge or reason to know factor and the attribution factor weigh in favor of granting her relief.  We address those arguments below.  The legal obligation factor is neutral in this case because neither petitioner nor Apostle was required by their divorce decree to pay any of the unpaid interest.

Petitioner contends that, even though it was the improper treatment of her income (i.e., the gain that she realized on the sale of the New York apartment) on the first amended joint return that caused an understatement on that return and the 1992-1994 interest liability to accrue, she had no knowledge or reason to

know of that understatement.  On the record before us, however, petitioner's contention cannot be sustained.

Taxpayers seeking to prove that they had no knowledge or reason to know of an item giving rise to an understatement of tax must demonstrate, at a minimum, that they have fulfilled a "duty of inquiry" with respect to determining whether their correct tax liability was reported on the return for the year for which they seek relief.  Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Butler v. Commissioner, 114 T.C. at 284.  When taxpayers fail to fulfill their duty of inquiry, they are ordinarily charged with constructive knowledge of any understatements on their returns.  See Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Cohen v. Commissioner, T.C. Memo. 1987-537 (the provisions providing relief from joint and several liability are "designed to protect the innocent, not the intentionally ignorant").

Petitioner was aware that the first amended joint return was filed to correct the omission of the entire amount of the gain that she realized on the sale of the New York apartment on Schedule D of the original joint return, and she signed a blank check for Apostle to use to pay the income tax liability reported on that return.  Petitioner failed, however, to question Apostle as to the manner in which her income was treated on the first amended joint return upon her return home from California in June

1992, and she did not ask to see that return until May 1994. Consequently, we conclude that petitioner failed to fulfill her duty of inquiry. Because petitioner is charged with constructive knowledge of the manner in which her income was treated on the first amended joint return and of the understatement of tax that resulted from that treatment, we conclude that she had reason to know of the understatement on that return.

Petitioner contends that the understatement on the first amended joint return is attributable to erroneous items of Apostle (i.e., the exclusion from gain claimed under section 121 and the deferral of gain recognition under section 1034) and that, as a result, the 1992-1994 interest liability is solely attributable to him. Petitioner dedicates most of her argument to accusing Apostle of fraud and to berating the IRS for not pursuing action against him. Petitioner's arguments are not persuasive, and her contention cannot be sustained.

Petitioner relied on Apostle and their accountant to complete and file the first amended joint return. The first amended joint return, and the understatement of income on that return, however, dealt specifically with the $564,000 gain that petitioner realized on the sale of the New York apartment. Petitioner is responsible for the manner in which her income was treated on that return. Therefore, the items affecting the treatment of her income on the first amended joint return are her

tax items.  See <u>Hopkins v. Commissioner</u>, 121 T.C. at 77.
Consequently, the understatement of tax on the first amended
joint return and the 1992-1994 interest liability that resulted
from that understatement are attributable to petitioner.

Based on our examination of the facts and circumstances in
this case, many of the factors in Rev. Proc. 2000-15, sec. 4.03,
2000-1 C.B. at 448, are neutral.  With respect to the factors
that are not neutral, those weighing against granting petitioner
relief outweigh those weighing in favor of granting her relief.
Accordingly, we conclude that respondent did not abuse his
discretion by acting arbitrarily, capriciously, or without sound
basis in fact in denying petitioner's request for equitable
relief under section 6015(f).

<u>Conclusion</u>

We hold that respondent did not abuse his discretion in
denying petitioner relief from joint and several liability under
section 6015.  We have considered the arguments of the parties
that were not specifically addressed in this opinion.  Those
arguments are either without merit or irrelevant to our decision.

To reflect the foregoing,

<u>Decision will be entered
for respondent</u>.