T.C. Memo. 2004-176


UNITED STATES TAX COURT


PHILIP CULLEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4741-03.              Filed July 28, 2004.


Philip Cullen, pro se.

<u>Horace Crump</u>, for respondent


MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, <u>Judge</u>:  This proceeding was commenced under section 6015 for review of respondent's determination that petitioner is not entitled to relief from joint and several liability for 1999 with respect to a joint tax return filed with Mary Cullen (Ms. Cullen).  The issues for decision are:  (1) Whether petitioner is eligible for relief from joint and several

liability under section 6015(b);[1] (2) whether petitioner is eligible for relief from joint and several liability under section 6015(c); and (3) whether respondent abused his discretion in denying petitioner's request for relief from joint and several liability under section 6015(f).

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and accompanying exhibits are, by this reference, incorporated in our findings. At the time the petition in this case was filed, petitioner resided in Navarre, Florida.

Background

Petitioner and Ms. Cullen were married but living separately during the calendar year 1999 and were divorced in September 2000. During their separation, Ms. Cullen lived in a travel trailer situated next door to the marital residence. Petitioner and Ms. Cullen filed a joint Form 1040, U.S. Individual Income Tax Return, for the year 1999.

Although both petitioner and Ms. Cullen have some college-level education, it was petitioner who collected and organized the financial records required to prepare their joint Federal income tax returns during their marriage. The 1999 tax return

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

signed and filed, without duress, by petitioner and Ms. Cullen was prepared by a professional tax return preparer employed by petitioner and utilizing information furnished by petitioner.

Ms. Cullen's Employment

Ms. Cullen, to the personal knowledge of petitioner at the time their joint 1999 Federal income tax return was prepared and filed, had worked for TGY Sitters, Inc. of Pensacola, Florida (TGY), during 1998 and 1999. On cross-examination by respondent's counsel, petitioner testified and the Court so finds as follows:

> Q. Mr. Cullen, did you have actual knowledge that your wife worked during 1999?
>
> A. Yes, I did.
>
> Q. Were you aware that she worked at TGY Sitters?
>
> A. I was.

The Form 1099-MISC, Miscellaneous Income, issued to Ms. Cullen for 1999 by TGY indicated nonemployee compensation for that year of $23,603. However, because petitioner did not have the Form 1099 and had not been informed by Ms. Cullen of the exact amount of income she had received from TGY, petitioner did not take any steps to ensure information concerning such income was provided to the tax return preparer. Consequently, this compensation was not reflected or included in the joint tax return filed for 1999.

Financial Affairs

During the early years of their marriage, petitioner and Ms. Cullen maintained a joint bank account with a single checkbook at Sunshine Bank in Pensacola, Florida. However, during 1999, petitioner deposited his monthly income in a checking account in his name at Regions Bank. Petitioner also testified and the Court so finds that during 1999 Ms. Cullen did not deposit her money into his Regions Bank account. He assumed that she had her own separate checking account.

Petitioner did not benefit from any of Ms. Cullen's 1999 TGY income since they did not live together at any time during or after 1999. Petitioner was left with all of their joint unpaid bills when Ms. Cullen moved out of their home, and their divorce decree did not address who was obligated to pay the 1999 taxes. As to the tax due on Ms. Cullen's $23,603 of 1999 income, petitioner "just assumed that she [Ms. Cullen] was taking care of her own business". He did not, however, verify this because he contended he "couldn't get a hold [sic] of her" although she was living in the trailer next door.

Request for Section 6015 Relief

Because of the $23,603 of unreported income, respondent determined an income tax deficiency and statutory additions with respect to petitioner and Ms. Cullen's 1999 tax year. Neither petitioner nor Ms. Cullen contested the statutory notice of

deficiency, and respondent assessed the tax deficiency and statutory additions. Thereafter, petitioner sought relief under section 6015. On February 11, 2003, respondent mailed to petitioner a final notice advising him that his requested section 6015 relief had been denied and that if he wished to contest this determination, he must file a petition with the U.S. Tax Court within 90 days. This Court's jurisdiction to review petitioner's claim for relief is conferred by section 6015(e), which allows a spouse who has requested relief from joint and several liability to contest the Commissioner's denial of relief by filing a timely petition in this Court. Petitioner filed a timely petition with this Court on March 25, 2003.

On May 22, 2003, respondent filed an answer to petitioner's petition and a certification under Rule 325(b), as amplified by King v. Commissioner, 115 T.C. 118 (2000). The certification confirmed that respondent had notified Ms. Cullen that petitioner had filed a claim for relief from joint and several liability and that she could intervene. Despite the notice, Ms. Cullen has not intervened in this case.

OPINION

I. Contentions of the Parties

Petitioner contends that he is eligible for relief from joint and several liability under section 6015(b), (c), or (f) for the 1999 tax liability and statutory additions. In essence,

petitioner contends:  (1) He is now divorced and did not live with Ms. Cullen during 1999 or thereafter; (2) the income responsible for the tax deficiency and statutory additions was all his wife's income; (3) while he knew she had TGY income for 1999, she would not tell him the amount of the income; (4) he did not benefit from the income; and (5) it would be inequitable and a financial hardship for him to have to pay the tax and statutory additions due on her income.

Other than the issue of equity, respondent did not seriously challenge any of these contentions.  Nevertheless, respondent argues that petitioner is not eligible for relief under either section 6015(b) or (c).  Respondent also asserts that there was no abuse of discretion in denying equitable relief from joint and several liability for any portion of the unpaid tax or statutory additions under section 6015(f).  Respondent's principal basis for these conclusions is that petitioner, by his own admission, had actual knowledge of the unreported TGY income at the time the 1999 joint Federal income tax return was signed and filed.

II.  <u>General Rules</u>

Married taxpayers may normally elect to file a joint Federal income tax return.  Sec. 6013(a).  After making the election, each spouse is fully responsible for the accuracy of the return and jointly and severally liable for the entire tax due for that year.  Sec. 6013(d)(3); <u>Butler v. Commissioner</u>, 114 T.C. 276, 282

(2000). A spouse (requesting spouse) may, however, seek relief from joint and several liability by following procedures established in section 6015. Sec. 6015(a). Except as otherwise provided in section 6015, petitioner bears the burden of proof. Rule 142(a); <u>Jonson v. Commissioner</u>, 118 T.C. 106, 113 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).[2]

Section 6015 provides three potential paths of relief from joint and several liability if certain statutory requirements are met. First, section 6015(b)(1) allows for traditional relief from joint and several liability following the model of former section 6013(e). Second, section 6015(c) provides for an allocation of liability for a deficiency as if the spouses had filed separate returns. Third, section 6015(f) confers discretion upon the Secretary to grant equitable relief in situations where relief is unavailable under section 6015(b) or (c).

III. <u>Relief Under Section 6015(b)</u>

Section 6015(b) provides:

> SEC. 6015(b). Procedures for Relief From Liability Applicable to All Joint Filers.--
>
> > (1) In general.--Under procedures prescribed by the Secretary, if--
> >
> > > (A) a joint return has been made for a taxable year;

---

[2] Petitioner has not contended that sec. 7491 applies to this case.

(B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all of the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

(2) Apportionment of relief--If an individual who, but for paragraph (1)(C) would be relieved of liability under paragraph (1), establishes that in signing the return such individual did not know, and had no reason to know, the extent of such understatement, then such individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to the portion of such understatement of which such individual did not know and had no reason to know.

(3) Understatement--For purposes of this subsection, the term "understatement" has the meaning given to such term by section 6662(d)(A).

"The requirements of section 6015(b)(1) are stated in the conjunctive. Accordingly, a failure to meet even one of them prevents a requesting spouse from qualifying for relief." Alt v. Commissioner, 119 T.C. 306, 313 (2002), affd. ___ Fed. Appx. ___ (6th Cir. 2004). There is no dispute that petitioner satisfies subparagraphs (A), (B), and (E) of section 6015 (b)(1). Nor is there any doubt that petitioner does not satisfy subparagraph (C). Under this requirement, the individual seeking relief under section 6015(b) must establish "that in signing the return he or she did not know, and had no reason to know" that there was an understatement attributable to the erroneous items of the other spouse. Sec. 6015(b)(1)(C); Cheshire v. Commissioner, 115 T.C. 183, 192-193 (2000), affd. 282 F.3d 326 (5th Cir. 2002). Here petitioner candidly acknowledged that when signing and filing the joint tax return he knew of his wife's unreported TGY income. Consequently, petitioner is ineligible for relief under section 6015(b)(1).

Notwithstanding the individual's knowledge or reason to know of some part of the understatement, section 6015(b)(2) permits the individual to qualify for relief as to the remainder of the understatement. Such relief is available if the individual establishes that in signing the return he or she did not know, and had no reason to know, the extent of the understatement. Sec. 6015(b). In that case, the individual will be relieved of

liability for tax "to the extent that such liability is attributable to the portion of such understatement of which such individual did not know and had no reason to know."  Sec. 6015(b)(2).

Where a taxpayer seeks to establish a lack of knowledge as to an item giving rise to an understatement of tax, the taxpayer must show that he acted as a reasonably prudent person and, where called for, inquired as to the facts of that item in order to determine its proper tax treatment.  Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Butler v. Commissioner, 114 T.C. at 284.  Where, as here, a taxpayer on notice that his spouse had unreported income but not the exact amount of income, fails to fulfill a "duty of inquiry", that taxpayer will ordinarily be charged with either actual or constructive knowledge of the tax return deficiency.  Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Demirjian v. Commissioner, T.C. Memo. 2004-22; Cohen v. Commissioner, T.C. Memo. 1987-537 (stating that the provisions providing relief from joint and several liability are "designed to protect the innocent, not the intentionally ignorant"); see also sec. 1.6015-3(c)(2)(iv), Income Tax Regs. ("deliberate effort to avoid learning about the item" may, with other factors, be tantamount to actual knowledge).

Because the entire tax deficiency in this instance arises as a result of Ms. Cullen's unreported TGY income, petitioner knew or had reason to know of the entire tax deficiency and is, therefore, ineligible for any relief under section 6015(b)(2).

IV. Relief Under Section 6015(c)

Section 6015(c) limits the liability of a taxpayer, such as petitioner, who is no longer married and who makes the appropriate election. In relevant part, section 6015(c) provides:

> SEC. 6015(c). Procedures To Limit Liability for Taxpayers No Longer Married or Taxpayers Legally Separated or Not Living Together.--
>
>    \*    \*    \*    \*    \*    \*    \*
>
> (3) Election.--
>
>    \*    \*    \*    \*    \*    \*    \*
>
> (C) Election not valid with respect to certain deficiencies.–If the Secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d), such election shall not apply to such deficiency (or portion). This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress.

As noted previously, petitioner had actual knowledge of Ms. Cullen's unreported TGY income when the joint tax return for 1999 was signed and filed. Petitioner also testified on cross-

examination that he did not suffer any verbal or physical abuse from Ms. Cullen. Thus, the Court concludes that petitioner knew or had reason to know that there was an understatement of tax on the 1999 joint tax return; that it was not signed under duress; and that section 6015(c) relief is not available. See <u>Jonson v. Commissioner</u>, 118 T.C. at 115.

IV. <u>Relief Under Section 6015(f)</u>

This Court has jurisdiction to review the denial of equitable relief. <u>Fernandez v. Commissioner</u>, 114 T.C. 324, 328-329 (2000); <u>Butler v. Commissioner</u>, <u>supra</u> at 292. The Court's precedent indicates it reviews respondent's denial of relief to determine whether respondent abused his discretion by acting arbitrarily, capriciously or without sound basis in fact. <u>Ewing v. Commissioner</u>, 122 T.C. 32, 39 (2004); <u>Butler v. Commissioner</u>, <u>supra</u> at 287-292. Petitioner has failed to make that showing here.

Section 6015(f) provides as follows:

> SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>
> (2) relief is not available to such individual under subsection (b) or (c), the Secretary may relieve such individual of such liability.

As discussed above, petitioner satisfies the requirement of section 6015(f)(2) that relief is not available under subsection (b) or (c). We turn then to the equitable test of section 6015(f)(1).

Pursuant to the authority granted in section 6015(f), respondent has prescribed "procedures" to use in determining whether a spouse qualifies for relief under section 6015(f). The factors listed in those procedures have been applied by this Court. Washington v. Commissioner, 120 T.C. 137, 147-152 (2003). At the time that petitioner filed his petition, March 25, 2003, those procedures were found in Rev. Proc. 2000-15, 2000-1 C.B. 447.[3] Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448, lists seven threshold conditions that must be satisfied before respondent will consider a request for relief under section 6015(f). The threshold conditions are as follows:

> (1) The requesting spouse filed a joint return for the taxable year for which relief is sought;

> (2) Relief is not available to the requesting spouse under [section] 6015(b) or 6015(c);

[3] Respondent's determination was subject to Rev. Proc. 2000-15, 2000-1 C.B. 447, because it was in effect when respondent's Appeals officer evaluated petitioner's request and when respondent issued the notice of determination. Rev. Proc. 2000-15, supra, superseded Notice 98-61, 1998-2 C.B. 756, effective Jan. 18, 2000. Rev. Proc. 2003-61, 2003-32 I.R.B. 296 (Aug. 11, 2003), superseded Rev. Proc. 2000-15, 2000-1 C.B. 447, for requests for relief under sec. 6015(f) pending on Nov. 1, 2003, for which no preliminary determination letter had been issued as of that date, and for requests for relief filed on or after that date.

(3) The requesting spouse applies for relief no later than two years after the date of the Service's first collection activity after July 22, 1998, with respect to the requesting spouse;

(4) * * * the liability remains unpaid. * * *

(5) No assets were transferred between the spouses filing the joint return as part of a fraudulent scheme by such spouses;

(6) There were no disqualified assets transferred to the requesting spouse by the nonrequesting spouse. If there were disqualified assets transferred to the requesting spouse by the nonrequesting spouse, relief will be available only to the extent that the liability exceeds the value of such disqualified assets. For this purpose, the term "disqualified asset" has the meaning given such term by section 6015(c)(4)(B); and

(7) The requesting spouse did not file the return with fraudulent intent.

Respondent did not contest that petitioner met the seven threshold conditions.

Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, then provides that, where a reported joint return liability is unpaid, relief under section 6015(f) will ordinarily be granted if three tests are satisfied. That section is not applicable here, however, since the unpaid tax liability was not reported on the filed 1999 joint tax return.

If relief under section 4.02 of the revenue procedure is not available, Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, provides factors that the Commissioner will consider in deciding whether to grant relief under section 6015(f).

- 15 -

Rev. Proc. 2000-15, sec. 4.03(1) and (2), 2000-1 C.B. at 448, establishes a partial list of four positive factors which, if present, the Commissioner weighs in favor of relief and, if absent, are treated as negative factors.  This section of the revenue procedure also lists two other positive factors which, if present, weigh in favor of relief and if absent, are neutral and two additional negative factors which, if present, weigh against granting relief and, if absent, are neutral.  One of these "solely negative" factors, however, has been interpreted by this Court also to carry positive weight if absent, such that we in essence view five factors as being either positive or negative. Ewing v. Commissioner, supra at 45; Ferrarese v. Commissioner, T.C. Memo. 2002-249.

The list of factors is not intended to be exhaustive.  Other factors may be considered, and no one factor is necessarily conclusive.  Nonetheless, some factors are more important than others.  An important factor, absent other unusually strong countervailing factors, may, when all factors are weighed appropriately, dictate the ultimate result.

As interpreted by this Court, the five positive or negative factors, as pertinent here, are:  (i) The requesting spouse would or would not suffer economic hardship if relief were denied; (ii) the unpaid tax liability is or is not attributable to the requesting spouse; (iii) the requesting spouse had or did not

have reason to know of the item giving rise to the deficiency; (iv) the requesting spouse did or did not significantly benefit beyond mere support from the unpaid liability or the taxable income which created it; and (v) the nonrequesting spouse had or did not have a legal obligation (per the divorce decree) to pay the tax liability (provided that, if neither spouse has the specified obligation, this factor is neutral).

The two additional potentially positive factors are: (i) Whether the requesting spouse is divorced or separated from the nonrequesting spouse and (ii) whether the requesting spouse was abused by the nonrequesting spouse. The additional potentially negative factor is whether the requesting spouse has made a good faith effort to comply with Federal income tax laws following the taxable year for which relief is requested.

In this case, factors in petitioner's favor include that he is divorced, that the liability is solely attributable to his former spouse's unreported income, and that he did not significantly benefit from the unreported income. The other factors are not helpful to petitioner.

Economic hardship, for instance, is defined as inability to meet reasonable basic living expenses. Sec. 301.6343-1(b)(4), Proced. & Admin. Regs. Although petitioner introduced some evidence that payment of the tax would cause him economic hardship in light of his claimed $9,600 annual income and

obligation to pay his and Ms. Cullen's nontax debts incurred prior to their divorce, he introduced no evidence as to his current assets and/or net worth. Other than 3 months of bank statements in 2003, petitioner likewise introduced no evidence of his basic living expenses or other current debts that would show he could not pay his current reasonable basic living expenses. Although petitioner testified that he had a fixed income for 2003 of approximately $800 per month, the bank statements reflect monthly deposits of between $950 and $1,050. The record does not explain the source of the additional deposited funds or the apparent discrepancies of $150 to $250 per month in petitioner's deposits versus his claimed monthly income. Petitioner's inconsistency on this point further weighs against him. See Ogonoski v. Commissioner, T.C. Memo. 2004-52.

The other three factors are neutral to petitioner. There was no spousal abuse, the decree of divorce did not assign the legal obligation to pay the Federal income tax at issue to either spouse, and there was no evidence introduced at trial that petitioner had not made a good faith effort to comply with the Federal tax laws after 1999.

Of the factors weighing against relief, the most important is present here and is the primary reason we deny petitioner's requested relief. That factor is petitioner's actual knowledge, when signing under penalty of perjury and filing the joint tax

return, that it did not include or otherwise report taxable income for 1999 earned by his wife from TGY. The Court rejects as not credible petitioner's testimony that he could not contact his wife, despite the fact she lived next to him in the travel trailer and signed their joint tax return, to find out either the amount of her TGY income or whether she had reported it to their tax return preparer.

Section 6013(d)(3) explicitly provides that "if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several." The filing of a joint return may afford taxpayers significant benefits in the form of lower taxes than would be the case if they elected to file separately. Therefore, unless relief is authorized by section 6015, each spouse should be held liable for the tax due on a joint tax return. In some cases, this Court may afford section 6015(f) relief even though the requesting spouse had knowledge of the tax deficiency or failure to pay the tax when the return was signed and filed. See, e.g., Foor v. Commissioner, T.C. Memo. 2004-54 (concluding that a multitude of favorable factors overcame the taxpayer's knowledge that the tax shown due would not be paid); Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448 (specifying that no single factor is determinative). However, petitioner's favorable facts in this case are not sufficient to establish an abuse of respondent's

discretion.  The Court shall sustain respondent's determination denying section 6015 relief.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.