T.C. Memo. 2004-74


UNITED STATES TAX COURT


DONNA M. KEITZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2859-02.                    Filed March 18, 2004.


Donna M. Keitz, pro se.

<u>Richard A. Stone</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


DEAN, <u>Special Trial Judge</u>:  This is a case arising under section 6015.[1]  Unless otherwise indicated, section references are to the Internal Revenue Code.  Respondent determined

_____

[1] Sec. 6015 was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), 112 Stat. 734, and is effective for any liability for tax arising after July 22, 1998, and any liability for tax arising on or before July 22, 1998, but remaining unpaid as of July 22, 1998.

petitioner was not entitled to relief for a $4,850 underpayment of tax for tax year 1996 pursuant to section 6015. The issue for decision is whether respondent abused his discretion by denying petitioner's request for relief from joint and several liability under section 6015(f) for the 1996 underpayment of tax.

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. At the time the petition was filed with the Court, petitioner resided in Baltimore, Maryland.

FINDINGS OF FACT

Petitioner married in 1980 and bore four children during the marriage. As of the time of respondent's determination, in June of 2001, three of the children were still minors. Petitioner has an eleventh grade education and was primarily a homemaker. During 1996, petitioner worked part time, earning $7,875 from which taxes were withheld. Petitioner's spouse, William A. Keitz, owned and operated his own electrical business, A.K. Electric. Petitioner had no involvement at all with Mr. Keitz's business. During their marriage, Mr. Keitz handled the family financial matters. He gave petitioner a weekly amount to cover food and other necessities and an allowance of $60 per week for herself. When the children needed clothes, Mr. Keitz would give petitioner additional money. Mr. Keitz demanded that petitioner not open any bills that came in the mail and that if she did, he

could "have her handled."

During 1995 and 1996, petitioner filed joint income tax returns with Mr. Keitz. For 1997, petitioner filed as head of household.

For the 1996 tax filing, petitioner gave her 1996 Form W-2[2] to Mr. Keitz shortly after the end of the taxable year. The Keitzes' 1996 adjusted gross income (AGI), as reported on the return, was $72,413. Of this amount, $71,295 was documented by Forms W-2, Wage and Tax Statement, or Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.

The remaining $1,117 of AGI comprised: (1) A $411 taxable refund; (2) $107 in dividend income; and (3) $599 in capital gains. Only $7,875 of the total AGI was attributable to petitioner.

Mr. Keitz had the 1996 joint tax return prepared at H & R Block by a person or persons unknown to petitioner. When Mr. Keitz told petitioner to sign the 1996 tax return, she signed a computerized document in the 1040PC format of a U.S. Individual Income Tax Return. IRS Publication 17 (1997 ed.) describes a Form 1040PC, prepared using a personal computer, as follows:

---

[2]In their Stipulations of Facts, the parties referred to Forms "W-4," Employee's Withholding Allowance Certificate. The Court assumes the parties meant Forms "W-2," Wage and Tax Statement.

> The computer prints the return in a three-column
> "answer sheet" format.  It prints line numbers and
> dollar amounts * * * only for lines on which you made
> an entry. * * * As a result, an 11-page conventional
> return requiring forms and schedules can be printed as
> a two-page 1040PC return.  [Vaksman v. Commissioner,
> T.C. Memo. 2001-165, affd. 54 Fed. Appx. 592 (5th Cir.
> 2002).]

At the time petitioner signed Form 1040PC, Mr. Keitz and the paid preparer had already signed it.

The return was filed electronically.  Petitioner did not discuss the return with her husband, nor did she question him about the return.

Mr. Keitz had always told petitioner he would take care of the taxes.  In 1992, when petitioner and her husband legally separated for the first time, Mr. Keitz memorialized his intention to pay their tax liabilities.  Their 1992 Voluntary Separation and Property Settlement Agreement states:

> The parties agree that they will file a joint income
> tax return for the tax year of 1992, and split the
> refund accordingly, with regard to both Federal and
> State tax requirements.  In the event that there is a
> tax payment due for either the State or Federal
> payment, Husband will pay the entire tax assessment.

Petitioner and her husband separated for the final time in 1997.  The parties have stipulated that, pursuant to a 1998 consent order, petitioner received approximately $1,600 per month from Mr. Keitz for child care and alimony during 1999 and 2000.

According to the 1998 consent order, beginning in May of 1998, Mr. Keitz was ordered to pay petitioner $1,873 per month,

consisting of $312 per week for child support and $625 per month in alimony.  Additionally, petitioner earned $25,689 in 2000.

On April 12, 1999, respondent withheld petitioner's 1998 Federal income tax refund and applied it toward the outstanding tax liability for 1995.  That is when petitioner became aware that there was a problem with their taxes.  Initially, petitioner did not pursue the matter because Mr. Keitz said he was taking care of it.  Respondent then withheld petitioner's 1999 Federal income tax refund and applied it toward the outstanding tax liabilities.

On July 24, 2000, respondent received a Form 8857, Request for Innocent Spouse Relief, from petitioner for the years 1995, 1996, and 1997.  On September 11, 2000, petitioner submitted to respondent her responses to respondent's Innocent Spouse Questionnaire.  In her response, petitioner provided a listing of her monthly expenses.  Those expenses total $2,821 and are as follows:

| | |
|---|---|
| House payment | $693 |
| Oil | 200 |
| Gas & electric | 200 |
| Auto fuel | 50 |
| Car insurance | 51 |
| Phone | 35 |
| Clothing | 200 |
| Recreation | 160 |
| Credit card | 80 |
| Food | 800 |
| Medical | 60 |
| Hair cuts | 50 |
| Cable | 42 |
| Lawyers | 100 |
| Child care | 100 |

On June 25, 2001, respondent determined petitioner was not entitled to relief from the deficiency for tax year 1997 pursuant to section 6015 because petitioner did not file a joint tax return for that year. Respondent granted petitioner relief from joint liability for the deficiencies for 1995 and 1996 pursuant to section 6015(c).

Despite the parties' agreement that the 1996 underpayment is solely attributable to Mr. Keitz and respondent's examiner's determination that Mr. Keitz bears the legal obligation for the underpayment, respondent determined petitioner was not entitled to relief for the $4,850 underpayment of tax for tax year 1996 pursuant to section 6015(f). Respondent contended that petitioner: (1) Failed to prove a belief that the tax would be paid; (2) did not fulfill her duty to inquire as to whether the tax would be paid; and (3) failed to show that it would be an economic hardship for her if relief were denied.

Petitioner filed a timely petition under section 6015(e) for a determination of relief from joint and several liability for an underpayment of tax on a joint return.

OPINION

The Court's determination as to whether petitioner is entitled to equitable relief under section 6015(f) is made in a trial de novo and is not limited to matter contained in respondent's administrative record.  Ewing v. Commissioner, 122 T.C. ___, ___ (2004) (slip op. at 20-21).

The Court reviews respondent's denial of relief under section 6015(f) for abuse of discretion.  See Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002); Butler v. Commissioner, 114 T.C. 276, 292 (2000). Petitioner bears the burden of proving that respondent abused his discretion in denying that relief.  See Washington v. Commissioner, 120 T.C. 137, 146 (2003); Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003). In order to prevail, petitioner must demonstrate that in not granting relief, respondent exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law.  See Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Mailman v. Commissioner, 91 T.C. 1079, 1082-1084 (1988).

Whether Petitioner Is Entitled to Equitable Relief

Section 6015(f) grants the Commissioner discretion to relieve from joint and several liability an individual who files a joint return.[3]  The parties agree that relief from the 1996 underpayment is not available to petitioner under section 6015(b) or (c), thereby satisfying section 6015(f)(2).

As contemplated by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. 447, 448, to be used in determining whether an individual qualifies for relief under that section.[4]  Rev. Proc. 2000-15,

---

[3]Sec. 6015 provides, in pertinent part, as follows:

SEC. 6015.   RELIEF FROM JOINT AND SEVERAL LIABILITY ON JOINT RETURN.

(f) Equitable Relief.--Under procedures prescribed by the Secretary, if--

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

[4]Respondent's determination is subject to Rev. Proc. 2000-15, 2000-1 C.B. 447, which was in effect when respondent evaluated petitioner's request and when respondent issued the notice of determination. Rev. Proc. 2000-15, supra, has been superseded by Rev. Proc. 2003-61, 2003-32 I.R.B. 296, effective for requests for relief filed on or after Nov. 1, 2003.

sec. 4.01, 2000-1 C.B. at 448, sets forth the threshold conditions that must be satisfied before the Commissioner will consider a request for equitable relief under section 6015(f). Respondent does not dispute that petitioner has satisfied those threshold conditions.

Circumstances Where IRS Ordinarily Grants Equitable Relief

Where the requesting spouse satisfies the threshold conditions set forth in Rev. Proc. 2000-15, sec. 4.01, then Rev. Proc. 2000-15, sec. 4.02, sets forth the circumstances, in any case where a liability reported in a joint return is unpaid, under which the Commissioner will ordinarily grant relief to that spouse under section 6015(f).

The Commissioner will ordinarily grant relief to a requesting spouse who satisfies all of the following elements as set forth in Rev. Proc. 2000-15, 2000-1 C.B. at 448:

(a) At the time relief is requested, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date relief was requested;

(b) At the time the return was signed, the requesting spouse had no knowledge or reason to know that the tax would not be paid. The requesting spouse must establish that it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the reported liability. * * *; and

(c) The requesting spouse will suffer economic hardship if relief is not granted. For purposes of this section, the determination of whether a requesting spouse will suffer economic hardship will be made by

the Commissioner or the Commissioner's delegate, and will be based on rules similar to those provided in § 301.6343-1(b)(4) of the Regulations on Procedure and Administration.

### 1. Petitioner's Marital Status

Petitioner was legally separated from Mr. Keitz at the time she filed the claim for relief in this case. They were divorced at the time of trial. The Court concludes that petitioner has satisfied this element.

### 2. Petitioner's Knowledge or Reason To Know the Tax Would Not Be Paid

In determining whether a taxpayer in an underpayment case is entitled to equitable relief under section 6015(f), the Court considers whether the requesting spouse knew, or had reason to know, when the return was signed that the tax would be unpaid. Hopkins v. Commissioner, 121 T.C. 73, 88 (2003); Wiest v. Commissioner, T.C. Memo. 2003-91. Respondent contends that petitioner did not prove that she did not know or did not have reason to know at the time the return was signed that the unpaid 1996 tax liability would not be paid and did not fulfill her duty to inquire.

In Washington v. Commissioner, supra at 138, the taxpayer, a high school graduate, signed a return jointly with her husband, a self-employed carpenter. She had no involvement in her husband's business. Id. at 138, 151. Nor did he discuss with her the preparation or filing of their joint return. Id. at 139.

The sole involvement of the taxpayer in <u>Washington</u> in preparing the tax return was to provide her Form W-2 to the paid preparer and sign the return. <u>Id.</u> at 138. The tax on her wages was paid through withholding. <u>Id.</u> at 139. The remaining tax liability was attributable to her husband. <u>Id.</u> at 139, 148.

In according her relief from liability, the Court found that Mrs. Washington did not know and had no reason to know at the time the return was signed that Mr. Washington would not pay the tax. <u>Id.</u> at 150-151. She believed her husband would pay the liability because it was solely related to his business operations. <u>Id.</u> at 151.

This case has similarities to <u>Washington</u>. Mrs. Keitz had no involvement in her husband's business. She gave Mr. Keitz her Form W-2, and he had their 1996 tax return prepared by H & R Block. What he told petitioner to sign was a return in the 1040PC format, in essence a computer printout of lines and numbers.

It is reasonable to conclude that Mrs. Keitz believed that Mr. Keitz would pay the tax. In fact, Mr. Keitz constantly assured petitioner that their taxes would be paid. Further, as in the <u>Washington</u> case, the liability here was solely

attributable to Mr. Keitz since Mrs. Keitz's taxes on her wages had been paid through withholding.

Given these facts, the Court concludes that petitioner at the time she signed the return did not know or have reason to know that the tax due would not be paid. The Court rejects respondent's argument that she possessed such knowledge or failed to fulfill a duty of inquiry. The Court concludes that petitioner has satisfied this element.

3. Petitioner Will Suffer Economic Hardship

Respondent contends that petitioner failed to show that she would suffer economic hardship if relief were denied. In determining whether a requesting spouse will suffer economic hardship if the relief is not granted, Rev. Proc. 2000-15, supra, looks to section 301.6343-1(b)(4), Proced. & Admin. Regs., for guidance. Rev. Proc. 2000-15, sec. 4.02(1)(c). Economic hardship is present if satisfaction of the tax liability in whole or in part will cause the taxpayer to be unable to pay her reasonable basic living expenses. Sec. 301.6343-1(b)(4), Proced. & Admin. Regs.

In 2000, petitioner earned $25,689 and received approximately $1,600 per month from Mr. Keitz for alimony and child support for three minor children. Petitioner had monthly expenses of $2,821, after which she had $920 per month remaining. Petitioner did not present any other evidence regarding any

additional claimed expenses.  Petitioner has failed to establish that she will suffer economic hardship if equitable relief is not granted.  The Court concludes that petitioner has not satisfied this element.  Accordingly, the Court concludes that petitioner fails to qualify for relief under Rev. Proc. 2000-15, sec. 4.02.

Balancing Factors for Determining Whether To Grant Equitable Relief Under Rev. Proc. 2000-15

Where, as here, the requesting spouse fails to qualify for relief under Rev. Proc. 2000-15, sec. 4.02, the Commissioner may nonetheless grant the requesting spouse relief under Rev. Proc. 2000-15, sec. 4.03.

Rev. Proc. 2000-15, sec. 4.03, lists the following two factors, which if present, the Commissioner weighs in favor of granting relief:  (1) The taxpayer is separated or divorced from the nonrequesting spouse; and (2) the taxpayer was abused by his or her spouse; and the following two factors, which if present, the Commissioner weighs against granting relief:  (3) The taxpayer received significant benefit from the unpaid liability or the item giving rise to the deficiency; and (4) the taxpayer has not made a good faith effort to comply with Federal income tax laws in the tax years following the tax year to which the request for relief relates.  Ewing v. Commissioner, 122 T.C. at ____ (slip op. at 22-24).

Rev. Proc. 2000-15, supra, implies that the Commissioner will generally not consider the absence of factor (1), (2), (3), or (4) in determining whether to grant relief under section 6015(f). However, on the basis of caselaw deciding whether it was equitable to relieve a taxpayer from joint liability under former section 6013(e)(1)(D), the Court considers the factor that a taxpayer did not significantly benefit from the unpaid liability or item giving rise to the deficiency as a factor in favor of granting relief to that taxpayer.[5] Ewing v. Commissioner, supra at ____ (slip op. at 22-24); Ferrarese v. Commissioner, T.C. Memo. 2002-249 (citing Belk v. Commissioner, 93 T.C. 434, 440-441 (1989); Foley v. Commissioner, T.C. Memo. 1995-16; Robinson v. Commissioner, T.C. Memo. 1994-557; Klimenko v. Commissioner, T.C. Memo. 1993-340; and Hillman v. Commissioner, T.C. Memo. 1993-151).

Rev. Proc. 2000-15, supra, lists the following four factors which, if present, the Commissioner weighs in favor of granting relief, and if not present, the Commissioner weighs against granting relief: (5) The taxpayer would suffer economic hardship if relief is denied; (6) in the case of a liability that was

---

[5]Cases deciding whether a taxpayer was entitled to equitable relief under sec. 6013(e)(1)(D) are helpful in deciding whether a taxpayer is entitled to relief under sec. 6015(f). Mitchell v. Commissioner, 292 F.3d 800, 806 (D.C. Cir. 2002), affg. T.C. Memo. 2000-332; Cheshire v. Commissioner, 282 F.3d 326, 338 n.29 (5th Cir. 2002), affg. 115 T.C. 183 (2000).

properly reported but not paid, the taxpayer did not know and had no reason to know that the liability would not be paid; (7) the liability for which relief is sought is attributable to the nonrequesting spouse; and (8) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability (weighs against relief only if the requesting spouse has the obligation). <u>Ewing v. Commissioner</u>, <u>supra</u> at _____ (slip op. at 22-24).

Rev. Proc. 2000-15, sec. 4.03(2), states that "No single factor will be determinative of whether equitable relief will or will not be granted in any particular case. Rather, all factors will be considered and weighed appropriately. The list is not intended to be exhaustive."

As discussed next, most of the factors the Commissioner uses in making section 6015(f) determinations do not support respondent's determination in this case.

1. <u>Petitioner's Marital Status</u>

Respondent determined that the marital status factor weighs in favor of petitioner. As discussed, <u>supra</u>, the Court agrees that this factor favors petitioner.

2. <u>Spousal Abuse</u>

Mr. Keitz did not abuse petitioner. Lack of spousal abuse is not a factor listed in Rev. Proc. 2000-15, sec. 4.03(2), that weighs against granting equitable relief. <u>Washington v.</u>

<u>Commissioner</u>, 120 T.C. at 149.  The Court concludes that this factor is neutral.

### 3.  <u>Significant Benefit</u>

Respondent determined that petitioner did not gain any significant benefit from the unpaid liability.  The Court concludes that this factor favors petitioner.  See <u>Ewing v. Commissioner</u>, <u>supra</u> at _____ (slip op. at 22-23).

### 4.  <u>Compliance With Tax Laws</u>

Petitioner filed returns for tax years 1995 through 1997, and respondent concedes that petitioner has complied with tax laws at least since 1996.  Rev. Proc. 2000-15, <u>supra</u>, lists tax compliance as a factor which the Commissioner will consider only against granting relief.  The Court concludes that this factor is neutral.

### 5.  <u>Economic Hardship</u>

As discussed, <u>supra</u>, petitioner has failed to establish that she will suffer economic hardship if equitable relief is not granted.  The Court concludes that this factor weighs against petitioner.

### 6.  <u>Knowledge or Reason To Know</u>

The Court has considered <u>supra</u> respondent's argument that petitioner at the time she signed the return knew or had reason to know that the tax due would not be paid.  The Court rejects respondent's argument that she possessed such knowledge or failed

to fulfill a duty of inquiry. The Court concludes that this factor favors petitioner.

7. Whether the Underpayment of Tax Is Attributable to Petitioner's Husband

Respondent concedes that the underpayment of tax for 1996 is attributable to Mr. Keitz. The Court concludes that this factor favors petitioner.

8. Legal Obligation To Pay Tax

During the evaluation process, respondent's examiner determined that Mr. Keitz bears the legal obligation for the tax liability. As neither party has introduced any additional evidence on this point, the Court accepts this determination and concludes that this factor favors petitioner.

9. Conclusion

Petitioner has presented a strong case for relief from joint liability under the factors promulgated by the Commissioner in Rev. Proc. 2000-15, supra. All of the factors except one, economic hardship, either weigh in favor of petitioner or are neutral. While the economic hardship factor weighs against petitioner, it does not outweigh the positive and neutral factors. Rev. Proc. 2000-15, sec. 4.03(2).

Petitioner is no longer married to Mr. Keitz. She did not significantly benefit from the underpayment, the underpayment was solely attributable to Mr. Keitz, petitioner has complied with

Federal tax laws at least since 1996, she did not know or have reason to know Mr. Keitz would not pay the unpaid tax for 1996, and Mr. Keitz bears the legal obligation to pay the tax. The neutral factors include petitioner's compliance with the tax laws and lack of spousal abuse. The Court determines that respondent's denial of relief under section 6015(f) was an abuse of discretion, and that, on the basis of the facts and circumstances, it would be inequitable to hold petitioner liable for the underpayment of tax for 1996.

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.