T.C. Memo. 2004-212

UNITED STATES TAX COURT

DELLA H. KNORR, Petitioner, AND DUANE J. KNORR, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7440-01.          Filed September 21, 2004.

<u>Michael R. N. McDonnell</u>, for petitioner.

Duane J. Knorr, pro se.

<u>Lorianne D. Masano</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  This proceeding was commenced under section
6015 for review of respondent's determination that petitioner is
not entitled to relief from joint and several liability for 1990,
1991, 1992, 1993, 1994, and 1995 with respect to joint income tax
returns that she filed with her former husband.  The issue for

decision is whether respondent abused respondent's discretion in denying petitioner's request for relief from joint and several liability under section 6015(f) for those years.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All amounts have been rounded to the nearest dollar.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time that the petition in this case was filed, petitioner resided in Naples, Florida.

Background

Petitioner married Duane J. Knorr (intervenor) on August 23, 1980. They had three children during the course of their marriage. Throughout their marriage, petitioner was a homemaker, and intervenor owned and operated a commercial painting and wall-covering installation business. Intervenor organized his business as a Florida corporation in February 1987 under the name Universal Painters & Vinyl Hangers, Inc. (Universal Painters). Universal Painters was operated as an S corporation during the years in issue. Petitioner did not participate in the business activities of Universal Painters, but she was aware of the significant growth in the business's size and profitability during the course of her marriage to intervenor.

As a result of Universal Painters's growth in profitability, petitioner and intervenor experienced a better lifestyle. In particular, they were able to purchase three houses in Naples, Florida; purchase a condominium at The Courtyard at Kings Lake (Kings Lake condominium), a property development located in Collier County, Florida; invest in stocks and Founders Funds, Inc. (Founders Funds), mutual funds; take regular vacations to Colorado, the Florida Keys, and the Bahamas; maintain $5,000 to $6,000 cash in a safe located in their home; pay a housekeeper $50 per day; and lease a Lincoln Navigator. Petitioner and intervenor jointly owned all three houses, the Kings Lake condominium, and the Founders Funds investments.

Petitioner's and intervenor's houses were located in three Naples subdivisions: Golden Gate Estates (Golden Gate residence); Forest Lakes Homes; and The Crossings, Stonegate (Stonegate residence). Petitioner and intervenor rented the Golden Gate residence to petitioner's brother during the years in issue. Petitioner and intervenor purchased the Stonegate residence on February 18, 1997, for $530,000. Petitioner and intervenor used their own funds for this purchase and did not incur a mortgage.

During the early years of their marriage, petitioner relied on intervenor to prepare and to file their joint income tax returns. Intervenor did not file their joint income tax returns

for 1984 through 1989 at the times that these returns were due. Sometime after learning of intervenor's failure to file their returns, petitioner confronted intervenor and convinced him to seek the help of a public accountant with respect to their tax matters. Petitioner and intervenor eventually filed their joint income tax returns for 1984 through 1988 with the Internal Revenue Service (IRS) on February 14, 1991. They did not, however, file a joint income tax return for 1989, and they did not pay their income tax liability for 1988 in full until sometime after August 5, 1991. Despite intervenor's previous failure to file their joint income tax returns and to pay their income tax liabilities in full, petitioner continued to rely on intervenor to handle the preparation and filing of their joint income tax returns during the years in issue.

Petitioner's and Intervenor's Joint Income Tax Returns for 1990 Through 1995

Petitioner and intervenor did not file their joint income tax returns for 1990 through 1995 at the times that these returns were due. Petitioner did not question intervenor about their failure to file income tax returns for these years until it was brought to her attention by intervenor. Petitioner and intervenor eventually filed their joint income tax returns for 1990 through 1995 in the latter part of 1996. Petitioner was neither forced nor coerced to sign these returns.

On their joint income tax return for 1990 (1990 return), petitioner and intervenor reported the following sources of income and loss:

| Source | Amount of Income (Loss) |
|---|---|
| Taxable interest | $13,484 |
| Dividends | 4,223 |
| Net long-term capital loss | (76,107) |
| Other losses | (840) |
| Universal Painters | 366,583 |
| Atrium Homes & Development | (75,492) |

Petitioner and intervenor received the dividends that they reported on the 1990 return from "Founder Funds". Petitioner and intervenor reported taxable income of $277,213, total tax of $79,916, and an estimated tax penalty of $5,261 for 1990. Petitioner and intervenor signed the 1990 return on December 14, 1996. The IRS received the 1990 return on December 18, 1996. Alex P. Martinez, C.P.A. (Martinez), prepared the 1990 return.

On their joint income tax return for 1991 (1991 return), petitioner and intervenor reported the following sources of income and loss:

| Source | Amount of Income (Loss) |
|---|---|
| Taxable interest | $2,438 |
| Long-term capital loss carryover | (73,107) |
| Universal Painters | 353,435 |
| Atrium Homes & Development | (189,922) |

Petitioner and intervenor reported taxable income of $137,141, total tax of $35,629, and an estimated tax penalty of $2,049 for 1991. Petitioner and intervenor signed the 1991 return on

December 2, 1996. The IRS received the 1991 return on December 5, 1996. Martinez prepared the 1991 return.

On their joint income tax return for 1992 (1992 return), petitioner and intervenor reported the following sources of income and loss:

| Source | Amount of Income (Loss) |
|--------|------------------------:|
| Taxable interest | $290 |
| Dividends | 5,041 |
| Net short-term capital gain | 6,243 |
| Long-term capital loss carryover | (70,107) |
| Other losses | (5,381) |
| Universal Painters | 252,847 |
| Atrium Homes & Development | (40,813) |

Petitioner and intervenor received the dividends that they reported on the 1992 return from the following sources: "Founders Money Market" and "Bedford Money Market". Petitioner and intervenor reported taxable income of $184,961 and total tax of $50,089 for 1992. Petitioner and intervenor signed the 1992 return on December 2, 1996. The IRS received the 1992 return on December 5, 1996. Martinez prepared the 1992 return.

On their joint income tax return for 1993 (1993 return), petitioner and intervenor reported the following sources of income and loss:

| Source | Amount of Income (Loss) |
|---|---|
| Taxable interest | $38 |
| Dividends | 3,751 |
| Net short-term capital gain | 3,835 |
| Net long-term capital loss | (86,975) |
| Universal Painters | 295,667 |

Petitioner and intervenor received the dividends that they reported on the 1993 return from the following sources: "Founders Money Market", "Oakmark Int'l Fund", and "Oakmark Fund". Petitioner and intervenor reported taxable income of $272,051 and total tax of $84,261 for 1993. Petitioner and intervenor signed the 1993 return on October 14, 1996. The IRS received the 1993 return on October 17, 1996. Martinez prepared the 1993 return.

On their joint income tax return for 1994 (1994 return), petitioner and intervenor reported the following sources of income and loss:

| Source | Amount of Income (Loss) |
|---|---|
| Taxable interest | $81 |
| Dividends | 7,492 |
| Net short-term capital gain | 1,639 |
| Net long-term capital loss | (28,524) |
| Rental income | 10,600 |
| Universal Painters | 563,786 |

Petitioner and intervenor received the dividends that they reported on the 1994 return from the following sources: "Founders Funds", "Founders Growth Funds", "European Stock Funds", "Int'l Stock Fund", "Japan Fund", "New Asia Fund", "Summit Cash Reserve", "Oakmark Int'l Fund", "Oakmark Fund",

"Oakmark ILA Gov't", and "FSP--Pacific Basin".  Petitioner and intervenor received the rental income that they reported on the 1994 return from two residential properties:  "Sunny Trail Heights" and "Golden Gates".  Petitioner and intervenor reported taxable income of $565,136 and total tax of $200,098 for 1994. Petitioner and intervenor signed the 1994 return on October 14, 1996.  The IRS received the 1994 return on October 17, 1996. Martinez prepared the 1994 return.

On their joint income tax return for 1995 (1995 return), petitioner and intervenor reported the following sources of income:

| Source | Amount of Income |
|--------|------------------|
| Net long-term capital gain | $43,365 |
| Universal Painters | 254,640 |

A large portion of the net long-term capital gain was attributable to the redemption of 15,510.497 shares of Founders Growth Fund, one of the Founders Funds mutual funds jointly owned by petitioner and intervenor, on December 14, 1995.  This redemption generated a $65,698 long-term capital gain. Petitioner and intervenor reported taxable income of $293,619 and total tax of $87,639 for 1995.  Petitioner and intervenor signed the 1995 return on October 14, 1996.  The IRS received the 1995 return on October 17, 1996.  Martinez prepared the 1995 return.

Petitioner and intervenor paid the income tax liabilities reported on their joint income tax returns for 1990 through 1995

at or about the times that they filed these returns with the IRS. At the times that petitioner signed these returns, she was aware that each return showed a substantial tax liability and that the total tax liabilities reported on these returns exceeded $500,000.

After petitioner and intervenor filed their joint income tax returns for 1990 through 1995, the IRS determined additions to tax under sections 6651(a)(1), (2), and 6654 and interest with respect to the tax liabilities reported on these returns. The additions to tax were determined in the following amounts:

| Year | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
|------|-----------------|-----------------|-----------|
| 1990 | $18,189 | $17,904 | $5,261 |
| 1991 | 8,017 | 8,907 | 2,049 |
| 1992 | 11,153 | 10,906 | 2,132 |
| 1993 | 18,959 | 13,060 | -- |
| 1994 | 45,022 | 19,009 | 5,306 |
| 1995 | -- | 2,464 | 4,451 |

Petitioner and intervenor were aware that they would be liable for additions to tax and interest at the times that they signed the joint income tax returns for 1990 through 1995. Prior to signing these returns, however, petitioner and intervenor decided that they would request that the IRS abate any additions to tax. Accordingly, they did not pay any amounts in excess of the income tax liabilities reported on the joint income tax returns for 1990 through 1995 at the times that they filed these returns. Petitioner did not question intervenor at or before the times that she signed these returns as to how and when the additions to

tax and interest would be paid if their request for abatement was denied.

On August 7, 1998, the IRS denied petitioner's and intervenor's request for abatement. As of March 2, 2001, the additions to tax and interest totaled more than $336,000. As of the time of trial on February 2, 2004, the additions to tax and interest remained unpaid.

Petitioner's and Intervenor's Divorce Proceedings

On April 15, 1998, petitioner and intervenor separated, and petitioner filed a petition for dissolution of marriage. Petitioner's and intervenor's marriage was dissolved by Final Decree of Dissolution of Marriage filed on November 1, 1999. A Final Judgment as to Equitable Distribution, Alimony and Child Support and Visitation (final judgment) was filed on August 15, 2000. Among other things, the final judgment declared intervenor solely responsible for payment of the additions to tax and interest that had been determined "or may accrue" with respect to the tax liabilities reported on petitioner's and intervenor's joint income tax returns for 1990 through 1995.

On or about September 11, 2000, intervenor filed an appeal with respect to the final judgment. On or about July 10, 2002, the final judgment was reversed in part. An Amended Final Judgment as to Equitable Distribution, Alimony and Child Support and Visitation (amended final judgment) was filed on February 24,

2003.  The amended final judgment awarded petitioner the following assets:

| Asset | Value |
|-------|-------|
| Stonegate residence | $454,137 |
| Lot 49 Southport mortgage proceeds | 16,321 |
| Furnishings and jewelry | 62,400 |

These assets were valued as of April 15, 1998.  In addition, the amended final judgment (1) awarded petitioner a $73,004 equalizer payment; (2) awarded petitioner permanent periodic alimony of $1 per year; (3) required intervenor to maintain the payments on petitioner's automobile for the 12 months succeeding entry of the amended final judgment; (4) required intervenor to pay all of the children's reasonably necessary medical, dental, ocular, psychological, and orthodontia expenses; and (5) required intervenor to pay petitioner $41,633 (and interest thereon) for previously ordered support.  The equalizer payment and the previously ordered support were to be paid within 90 days of the date of the amended final judgment.  As set forth in the amended final judgment, a hearing was to be held to determine the amount of the monthly child support payments that intervenor would be required to make to petitioner.  The amended final judgment also declared intervenor solely responsible for payment of the additions to tax and interest that had been determined "or may accrue" with respect to the tax liabilities reported on

petitioner's and intervenor's joint income tax returns for 1990 through 1995.

Petitioner's Request for Relief From Joint and Several Liability

On January 22, 1999, the IRS received petitioner's Form 8857, Request for Innocent Spouse Relief, on which she requested relief from joint and several liability under section 6015 with respect to 1990 through 1995.  On March 8, 2001, the IRS sent to petitioner a Notice of Determination Concerning Your Request for Relief from Joint and Several Liability under Section 6015 (notice of determination) with respect to those years.  The notice of determination set forth the following reasons for the denial of petitioner's request for relief from joint and several liability:

> We've determined, for the above tax years, that:
>
> *     *     *     *     *     *     *
>
> • You are not eligible for relief under Section 6015(f).  Section 6015(f) allows us to provide equitable relief when you don't qualify for relief under either Section 6015(b) or 6015(c) and when holding you responsible for the tax liability would be unfair or inequitable, given your particular circumstances.
>
> In this case, the unpaid liability is attributable to interest and penalties on the taxes shown on the returns you filed.  Since there are no additional deficiencies assessed subsequent to these taxes, relief under sec. 6015(b) or sec. 6015(c) is not applicable. For sec. 6015(f), relief is not warranted since you have not established that payment of the amount due would cause an economic hardship or that it would be inequitable to hold you liable for these amounts.

Petitioner's Financial Status as of the Time of Trial

As of the time of trial on February 2, 2004, intervenor was paying petitioner approximately $1,520 per month for child support and an additional $700 per month to pay off the debt that he owed to her as a result of their divorce. As of the time of trial, petitioner was employed as a personal trainer at a Naples area YMCA and was earning approximately $300 per week. Petitioner also had private personal training clients from time to time. Petitioner was eager to sell the Stonegate residence, which had a value in excess of $650,000 as of the time of trial, but she had not taken any steps towards doing so.

OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is fully responsible for the accuracy of the return and jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). A spouse (requesting spouse) may, however, seek relief from joint and several liability by following procedures established in section 6015. Sec. 6015(a).

Under section 6015(a), a requesting spouse may seek relief from liability under section 6015(b) or, if eligible, may allocate liability according to the provisions under section 6015(c). Relief from joint and several liability under section

6015(b) or (c) is premised on the existence of a deficiency for the year for which relief is sought. Sec. 6015(b)(1)(D), (c)(1); see H. Conf. Rept. 105-599, at 252-254 (1998), 1998-3 C.B. 747, 1006-1008. Consequently, if there is no deficiency for the year for which relief is sought, relief from joint and several liability is not available under either subsection. See Washington v. Commissioner, 120 T.C. 137, 146-147 (2003); see also Hopkins v. Commissioner, 121 T.C. 73, 88 (2003); Block v. Commissioner, 120 T.C. 62, 65-66 (2003); Ewing v. Commissioner, 118 T.C. 494, 497, 498 n.4 (2002); cf. sec. 6015(e)(1). In this case, petitioner seeks relief from additions to tax and interest that respondent determined with respect to the tax liabilities reported on the joint income tax returns for 1990 through 1995 rather than from deficiencies for those years. Accordingly, no relief is available to petitioner under section 6015(b) or (c).

If relief is not available under either section 6015(b) or (c), an individual may seek equitable relief under section 6015(f). Sec. 6015(f)(2). Section 6015(f) permits relief from joint and several liability where "it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)". Sec. 6015(f)(1). Equitable relief under section 6015(f) is granted at the Commissioner's discretion.

We review the Commissioner's determination to deny equitable relief under section 6015(f) using an abuse of discretion

standard.  Butler v. Commissioner, supra at 287-292.  Under this standard of review, we defer to the Commissioner's determination unless it is arbitrary, capricious, or without sound basis in fact.  Jonson v. Commissioner, 118 T.C. 106, 125 (2002) (citing Butler v. Commissioner, supra at 292; Pac. First Fed. Sav. Bank v. Commissioner, 101 T.C. 117, 121 (1993)), affd. 353 F.3d 1181 (10th Cir. 2003).  The question of whether the Commissioner's determination was arbitrary, capricious, or without sound basis in fact is a question of fact.  Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002).  We are not limited to the matters contained in the Commissioner's administrative record when deciding this question.  Ewing v. Commissioner, 122 T.C. 32, 35-44 (2004).  Petitioner bears the burden of proving that respondent abused respondent's discretion in denying her relief under section 6015(f).  Washington v. Commissioner, supra at 146; Jonson v. Commissioner, supra at 125. Petitioner's brief contains bold and general rhetoric and no analysis of the evidence or of the applicable authorities, notwithstanding the Court's specific direction that her brief address section 6015(f) and the relevant factors.

As directed by section 6015(f), the Commissioner has prescribed procedures to use in determining whether a relief-seeking spouse qualifies for relief under that subsection. Notice 98-61, 1998-2 C.B. 756, provided interim guidance for

taxpayers seeking equitable relief from joint and several liability. Notice 98-61, supra, was superseded by Rev. Proc. 2000-15, 2000-1 C.B. 447, effective January 18, 2000, which, in turn, was superseded by Rev. Proc. 2003-61, 2003-32 I.R.B. 296, effective for requests for relief filed on or after November 1, 2003, and for requests for relief pending on November 1, 2003, for which no preliminary determination had been issued as of that date. Rev. Proc. 2003-61, secs. 6 and 7, 2003-32 I.R.B. at 299; Rev. Proc. 2000-15, secs. 6 and 7, 2000-1 C.B. at 449. Petitioner's request for relief and respondent's determination are subject to Rev. Proc. 2000-15, 2000-1 C.B. 447, because that revenue procedure was in effect when respondent evaluated petitioner's request and when respondent issued the notice of determination on March 8, 2001. See Ewing v. Commissioner, supra at 44 n.12. This Court has upheld the use of these procedures in reviewing a negative determination. See, e.g., Washington v. Commissioner, supra at 147-152; Jonson v. Commissioner, supra at 125-126; cf. Ewing v. Commissioner, supra at 45. (Subsequent modification of these procedures by Rev. Proc. 2003-61, 2003-32 I.R.B. 296, does not affect our analysis of this case.)

Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448, lists seven threshold conditions that must be satisfied before the Commissioner will consider a request for relief under section 6015(f). Respondent conceded that petitioner has met those seven

threshold conditions.  If the threshold conditions are satisfied,
Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, lists
circumstances where relief will generally be granted in cases
where a liability reported on a joint income tax return has gone
unpaid.  We have considered the circumstances listed in Rev.
Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, in cases where the
liability reported on a joint income tax return was unpaid.  See,
e.g., Morello v. Commissioner, T.C. Memo. 2004-181; August v.
Commissioner, T.C. Memo. 2002-201; Collier v. Commissioner, T.C.
Memo. 2002-144; Castle v. Commissioner, T.C. Memo. 2002-142.  We
have declined to consider them where the liability for which
equitable relief was sought was not such a reported but unpaid
liability.  See, e.g., Demirjian v. Commissioner, T.C. Memo.
2004-22; Mellen v. Commissioner, T.C. Memo. 2002-280.  In the
instant case, petitioner and intervenor paid the income tax
liabilities reported on their joint income tax returns for 1990
through 1995 at or about the times that they filed these returns.
The additions to tax and interest resulted from, among other
things, petitioner's and intervenor's failure to file these
returns at the times that they were due.  Consequently, Rev.
Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, is not applicable
here.

    If the requesting spouse satisfies the threshold conditions
of Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448, but does

not qualify for relief under Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, the Commissioner looks to Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, to determine whether the taxpayer should be granted equitable relief. Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, provides a partial list of positive and negative factors that the Commissioner is to take into account when considering whether to grant an individual full or partial equitable relief under section 6015(f). As Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, makes clear, no single factor is to be determinative in any particular case, all factors are to be considered and weighed appropriately, and the list of factors is not intended to be exhaustive.

Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, lists the following two factors that, if true, the Commissioner weighs in favor of granting relief and that, if not true, are neutral: (1) The taxpayer is separated or divorced from the nonrequesting spouse and (2) the taxpayer was abused by his or her spouse. Respondent conceded that the marital status factor weighs in petitioner's favor. The abuse factor is neutral in this case because petitioner failed to provide any detailed or corroborating evidence with respect to her generalized claim that intervenor was physically and emotionally abusive.

In addition, Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, lists the following two factors that, if true, the

Commissioner weighs against granting relief and that, if not true, are neutral: (1) The taxpayer received a significant benefit from the unpaid liability and (2) the taxpayer has not made a good faith effort to comply with the Federal income tax laws in the years following the year to which the request for relief relates. The significant benefit factor weighs against petitioner because she and intervenor were able to purchase the Stonegate residence and to maintain their comfortable lifestyle as a result of not paying the additions to tax and interest at the times that they filed their joint income tax returns for 1990 through 1995. The noncompliance factor is neutral in this case because neither evidence nor argument has been presented as to whether this factor weighs against petitioner.

Finally, Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, lists the following four factors that, if true, the Commissioner weighs in favor of granting relief and that, if not true, the Commissioner weighs against granting relief: (1) The taxpayer would suffer economic hardship if relief were denied; (2) the taxpayer did not know and had no reason to know that the liability would not be paid at the time that the return was signed; (3) the liability for which relief is sought is solely attributable to the nonrequesting spouse; and (4) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability. The legal

obligation factor weighs in favor of granting relief only if the taxpayer did not know or have reason to know that, at the time that the divorce decree or agreement was entered into, the nonrequesting spouse would not pay the liability and weighs against granting relief only if the taxpayer has the obligation. Rev. Proc. 2000-15, sec. 4.03(1)(e), (2)(f), 2000-1 C.B. at 449. Petitioner argues that the economic hardship factor weighs in favor of granting her relief. For the reasons discussed below, the economic hardship factor, the knowledge or reason to know factor, and the attribution factor weigh against petitioner. The legal obligation factor would have weighed in petitioner's favor but for the facts and circumstances of this case establishing that she knew or had reason to know that, at the time that the amended final judgment was filed, intervenor would not pay the additions to tax and interest. Consequently, the legal obligation factor is neutral in this case.

Economic hardship is determined by using rules similar to those under section 301.6343-1(b)(4), Proced. & Admin. Regs., and generally involves an inability to pay reasonable basic living expenses. This regulation provides that the Commissioner will consider any information offered by the taxpayer that is relevant to the determination, including, but not limited to, the taxpayer's age, ability to earn, responsibility for dependents,

and the amount reasonably necessary for basic living expenses. See sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

After respondent issued the notice of determination, intervenor successfully appealed a portion of the final judgment, and, as a result, an amended final judgment was filed in February 2003. As set forth in the amended final judgment, petitioner was awarded unencumbered assets with a value in excess of $532,000 as of April 15, 1998, and intervenor was required, inter alia, to pay to petitioner more than $114,000 with respect to previously ordered support and an equalizer payment. Among the unencumbered assets awarded to petitioner was the Stonegate residence, which, as of the time of trial on February 2, 2004, had appreciated to a value in excess of $650,000. Moreover, as of the time of trial, intervenor was paying to petitioner $700 per month to satisfy his debt to her as well as approximately $1,520 per month for child support, and petitioner was employed as a personal trainer and was earning approximately $300 per week (excluding any earnings from private personal training clients).

Petitioner did not present evidence of her reasonable basic living expenses or otherwise show economic hardship. She asserted that liens in excess of $350,000 have been placed on the Stonegate residence since the time of her divorce from intervenor. It is unclear whether the liens that she had in mind included liens for the tax liabilities in dispute, but, in any

event, the record suggests that she would have substantial equity in the residence after satisfaction of those tax liabilities and discharge of any other liens.

Petitioner's situation is dissimilar to the situations of those taxpayers who were living at or near poverty level at the time of their request for relief from joint and several liability and who proved that they would suffer economic hardship without relief. See, e.g., Washington v. Commissioner, 120 T.C. at 149-150; Foor v. Commissioner, T.C. Memo. 2004-54; Ferrarese v. Commissioner, T.C. Memo. 2002-249; August v. Commissioner, T.C. Memo. 2002-201; Rowe v. Commissioner, T.C. Memo. 2001-325. On the record in this case, petitioner has not persuaded us that the economic hardship factor weighs in favor of granting her relief.

In order to satisfy the knowledge or reason to know factor under the circumstances of this case, petitioner must establish that it was reasonable for her to believe that intervenor would pay the additions to tax and interest at the times that she signed those returns. See, e.g., Ewing v. Commissioner, 122 T.C. at 47-48; Hopkins v. Commissioner, 121 T.C. at 88-89; Washington v. Commissioner, supra at 150-151; Morello v. Commissioner, T.C. Memo. 2004-181; Keitz v. Commissioner, T.C. Memo. 2004-74; Foor v. Commissioner, supra; Ogonoski v. Commissioner, T.C. Memo. 2004-52; Wiest v. Commissioner, T.C. Memo. 2003-91; Collier v. Commissioner, T.C. Memo. 2002-144.

At the times in 1996 that petitioner signed the joint income tax returns for 1990 through 1995, she was well aware of intervenor's past failures to file their returns on time and to pay their income taxes. Petitioner was also aware that additions to tax and interest were owed on their joint liabilities for 1990 through 1995. Petitioner testified as follows:

> Q [By petitioner's counsel] Did you have any discussions with him [intervenor] about paying penalties?
>
> A I knew that there were penalties to be paid. Yes. But as far as how much and how they were going to be paid, no. * * *

Despite her knowledge of intervenor's habitual delinquency with respect to their income tax obligations, petitioner agreed to defer payment of the additions to tax and interest and request that the additions to tax be abated. Petitioner did not question intervenor at or before the times that she signed the joint income tax returns for 1990 through 1995 as to how and when the additions to tax and interest would be paid if their request for abatement was denied. Under these facts and circumstances, petitioner has not established that it was reasonable for her to believe that intervenor would pay the additions to tax and interest at the times that she signed the joint income tax returns for 1990 through 1995. Furthermore, petitioner has identified no ground warranting an abatement nor otherwise shown that it would have been reasonable for her to believe that an

abatement would be granted.  We have consistently applied the principle that the provisions providing relief from joint and several liability are "designed to protect the innocent, not the intentionally ignorant".  Dickey v. Commissioner, T.C. Memo. 1985-478; see, e.g., Morello v. Commissioner, supra; Demirjian v. Commissioner, T.C. Memo. 2004-22; Feldman v. Commissioner, T.C. Memo. 2003-201; Taylor v. Commissioner, T.C. Memo. 1997-513; Barnhill v. Commissioner, T.C. Memo. 1996-97; Shannon v. Commissioner, T.C. Memo. 1991-207; Berry v. Commissioner, T.C. Memo. 1990-396, affd. without published opinion 935 F.2d 1280 (3d Cir. 1991); Cohen v. Commissioner, T.C. Memo. 1987-537.  Consequently, the knowledge or reason to know factor weighs against granting petitioner relief.

The unpaid liability in this case is the result of, among other things, petitioner's and intervenor's failure to file their joint income tax returns for 1990 through 1995 and to pay their income taxes for those years when they were due.  All taxpayers have a duty to file timely and accurate returns and to pay the amounts shown as due on those returns.  See generally secs. 6001, 6011(a), 6012(a)(1), 6072(a), 6151(a).  Therefore, petitioner's reliance on intervenor to handle the preparation and filing of their joint income tax returns does not establish that the additions to tax and interest are solely attributable to intervenor.  Furthermore, petitioner has not denied that the

income tax liabilities reported on the joint income tax returns for 1990 through 1995 were, in part, attributable to assets that she jointly owned with intervenor. Consequently, the attribution factor weighs against granting petitioner relief.

Based on our examination of the facts and circumstances in this case, the factors in Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, weighing against granting petitioner relief outweigh those weighing in favor of granting her relief. Accordingly, we conclude that respondent did not abuse respondent's discretion by acting arbitrarily, capriciously, or without sound basis in fact in denying petitioner's request for equitable relief under section 6015(f).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent.</u>